•■Chief Justice Robertson-,
delivered the opinion of the court
Chvrles T. MAu.ira.vLn, the son of Alexander K. Marshall, and Mary P.xion and others, •he children of Maria Paxton, a daughter of the said *354 A, K. Marshall, sued John L. Luke in detinue, for several slaves. On the general issue pleaded, with leave to prove any matter which might have been specially pleaded in bar, a jury found a verdict for the appellees for all the slaves claimed in their declaration, and the circuit court having overruled a motion for a new trial, rendered judgment on the verdict.
The appellees claimed the slaves under the will of A. K. Marshall. The appellant claimed them under the will of his mother, who was the second wife of A. K. Marshall, and part of them also, in virtue of a bill of sale executed by her a short time prior to her death.
A. K. Marshall’s will is as follows: “In the namte of God — Amen.—I Alexander K. Marshall do1 make my will.
1st. 1 make my present wife my sole executor, and' do authorize her to dispose of any property landed or personal, to pay my debts, or finish the house I am now building.
2d. 1 give to my present wife every thing I own, for her life, to be responsible to no person, and at her pleasure (if she has no issue by me) to dispose of it among my children by my first wife as she pleases.
3d. If my wife has issue by me, (after her death,if the issue survives her) I give the whole property to that issue.
4th. If my wife should die without disposing of the property, I will, that what little I have left, shall go to my son Charles, to the children of Maria Paxton and Jane Sullivan.”
Mrs. Sullivan- had no child at the date of the will, but died before the death of the testator, leaving an infant daughter, who was alive at the time of the trial. The slaves in contest, constituted a portion of the estate devised by the will of A. K. Marshall.
As all the various points presented by the assignment of errors, depend on the proper construction of A. K. Marshall’s will, we shall not consider them individually, but dispose of them in the aggregate, by determining three propositions, in some one of which they .are all involved.
When the contingency ¿"vise^of& slaves is to take effect, must occur,. if at all, within a life in being anil ill years, the devise is valid. When the will gives the ex-ecu-or no power to sell any of the property, except for specified purposes, 'a sale of the property for any other purpose and a knowledge thereof by venr dee. renders the sale invalid.
*355 1 1st. Had Mrs. Marshall a right to devise the slaves?
. , . 2d, Did her bill of sale of two of them pass the ti* tie thereto. .
3d. Can the action be maintained in the names of the appellees alone?
1st. The will vested in Mrs. Marshall a life estate only. The power given to her to sell the property, was special; and her power to dispose of it among the children of the testator, according to her discretion, was also a qualified power; and, therefore, neither of these powers could have the effect of vesting in her an absolute fee simple, or any greater estate, than one for her life. She had not an absolute control over the estate,even during her life. She had no power to sell any portion of it for any other purposes, than those specially designated by the will, or to give it to any other person than a child of the testator; neither her title nor power was enlarged by the declaration, that she should not be responsible to any person.
When the whole will is considered, and a proper effect given to every part of it, that declaration means,only, that she should not be responsible for the manner of exercising the discretion, or executing the powers expressly delegated to her. It did not enlarge her power or convert her estate into an absolute fee. For by giving it such an operation, other provisions and limitations in the will would be rendered nugatory.
If she had absolute power to dispose of the estate,, in any manner she might choose; her title would, by construction of law, have been unlimited, and consequently, thecontingent devise over to the testator’s children, would have been void, and if she had made no disposition of the property, the law would have vested it in her heirs. It seems- to us, therefore, quite obvious, that she had only a life estate, and could not, by her will, devise any portion of the property to her son, who-was not one of the testator’s children.
It is scarcely necessary to add, that the contingency on which the devisees in remainder were to take the estate,is not too remote. For it is evident, that it must occur within a life in being and 21 years; and even sooner than that extreme limitation.
When a purchaser of property from an executor knows, that the sale made to him is for a purpose unauthorimd by Ihe will, the law considers him as participant in a fraud on the devisees in remainder, and will not suffer him to beben.-fitted by the sale.
in trespass or twvcr, the non-joinder * of any person who ought to be made coplaimiff, is pleadable in abatement only-
*356 2d. As ¡lie will gave to Mrs. Marshall no power to sell any of the prope ty, except for tbe payment of tbe testator’s debts or for the completion of his bouse, it necessarily follows, that her bill of sale, of two of the slaves to the appellant, vested in him no title after her death, if she made it for any other purpose, and if lie knew that fact. As she bad a qualified power to sell, be could not lie affected by an abuse of that power, if he purchased the vla\ es in good faith. But if be knew that she made the bill of sale to him for an unauthorized purpose, the law would consider him as a participant in a fraud on tbe devisees in remainder, and lie could not, therefore, be benefitted by the color-able sale to him.
Whatever may bo tbe true effect of all the circumstances, we are satisfied that the jury did not infer, without evidence, as they seem to have inferred, that the bill of sale was made for an illegal purpose, and that the appellant was fully acquainted with that fact. It was dated only a few days prior to Mrs. Marshall’s death; the appellant, who was her executor, reported the two slaves contained in it, as a portion of the estafe left by her. He had managed the estate of A. K. Marshall, as her agent. A settlement made be-tween him and her, when Ihe bill of sale was executed, showing a balance in his favor, and which ¶ as the ostensible consideration for if, shows that many of the-charges made against her and allowed by her, were for advances which he had made to her for individual use, and not for payment of A. K. Marshall’s debts, or for expenses incurred in finishing the house. She had surely no power to sell the estate for her own use.' such a power would have transmuted her title as devisee, into an absolute and perfect fee simple. The jury had a right to infer from the facts proved, that (he bill of sale was merely colorable, and was so intended and known to be by both parties to it Consequently, as Mrs. Marshall had no issue by A. K. Marshall, the legal right to. the slaves passed at her death to the plaintiffs, either exclusively or conjointly with any other heirs of A. K. Marshall.
3d. If the appellees be not the exclusive owners of the slaves, the judgment cannot be sustained. If the suit had been trespass or trover, the non-joinder of any *357 other person who ought to have been a co-plaintiff would have been pleadable in abatement only.
Dptinue is not strictly an action ex delicio. Dotin'"* resemble8 debt more than trespass.
When, on the general issue in trespass or trover, it appears, that a necessary plaintiff has not joined in the action, thedefendanl, is entitled to a reduction of the damages pro rata. When, on the general issue in detinue, it appears that a necessary plaintiff has not joined in the action, it is a ground of nonsuit.
On the death of a joint devisee, previous to the decease of the testator, his legacy does not lapse, but sumr.es to hi* co-devisees.
It is now the policy of the law to pro. vont survivorship.
*357 But dc.inuc is not strictly an action ex d iicto. It resembles debt more than trespass. A judgment in detinue is not merely for damages, it is lirst tor the property spocilically, and it must be necessarily for the entire property and for the entire damages.
On the general issue in trespass or trover, the nonjoinder of a ucr.essa. y plaindif can have hut one effect, that is, it entitles the defendant to a induction of the damages pro rota. Bat the same fid cannot have the same "lied in detinue. It must, tnerefore, either have, no effect, or must operate a? in an action rw contractu as a cause for non-suit, or for an arrest of the judgment; and lienee, we conclude from the reason find antilogies of the law, that if any other person than plaintiffs have any Jegal interest in the slaves, tíre action, as brought, is not maintainable. If the devise be construed to be to Mrs. Sullivan’s children,her child was a necessary plaintiff, and if Mrs. Sullivan was a sole or several devisee, the legacy to her, lapsed in consequence of her dying prior to the death of the testator, and vested in his heirs, one of whom was her surviving child; I Pr. 'Wins. 701); li Ibid, -1S9; II Strange, 820; and the authorities there cited. And in that event, the action is not main! ainable in the names of the appellees alone. But if Mrs. Sullivan had been a joint devisee, the legacy to her would not have lapsed by her death, hut would have survived to her co-devisees the appellees.
However contrary to the actual intention of the testator such a consequence might be, it is, nevertheless, according to the intention presumed bylaw; II Atkins, 220; Ba. ah. Devise, I.. 4. in the event of such a survivorship, the action was properly brought.
We are of opinion, however, that the devise should be construed to be several and not joint. It is now the policy of the law to prevent survivorship; and therefore, such a construction as will make a devise joint and not several, will not be favored.
In this case, the phraseology of the will authorizes the inference, that the testator intended that the devisees in remainder, should take disuilralively, just as ihev would have done if thev had been his only heirs *358 and he had died intestate; and this construction of the will is fortified by the following consideration.
Such a construction, as makqis a devis e joint, should not be flivored.
If the devise were joint, each of the- children of Mrs. Paxton would be entitled to an interest equal to that of the son, Charles Marshall. Now, we cannot think, that such was the intention of the testator; on the contrary, it seems plain to us, that the testator intended that the interest of his son Charles should be equal to the joint interest of all the children of his daughter, Maria Paxton. If this be admitted, the devise is several and not joint. Consequently, if the devise be to Mrs. Sullivan’s child, that child ought to have been a co-plaintiff, or if it were to Mrs. Sullivan, as, in that event; her legacy lapsed to- the Heirs of A. K. Marshall, all his heirs, as well-as the appellees ought to have united in the suit.
It only remains to be decided, whether Mrs. Sullivan or daughter was the devisee. And here we confess, that we feel some doubt and difficulty. If the preposition to had been prefixed to “Jane Sullivan;” there could be no doubt that she was the devisee, if of had been prefixed to her name, there could be no more doubt that her daughter and not herself was the devisee. But, without either of these indexes, the devise may be construed as a bequest either to the mother or to the child. We incline, however, to the opinion, that the mother was intended. Philological criticism is far from being a sure test for ascertaining the intention of a testator; and even that test, uncertain as it may be, can scarcely be applied to the phaseology of the devise now under consideration.
The copulative “and” must be understood between “Chdrles Marshall” and “the children.” Then the sentence should read, when all the elipses are supplied, “to my son Charles and to the children of Maria Paxton, and to Jane Sullivan. This would seem to accord with grammatical propriety. But it would be unprofitable to reason minutely and critically on such a subject. Extraneous considerations which should have influence, as they show- the subject matter more satisfactorily than the abstract phaseology of the will,.tend to fortify the construction which we had given to thg language,
Crittenden and Reid, for appellant; T. Marshall, for appellees.
Maria Paxton was dead, and left surviving children. Mrs. Sullivan was alive and had no children. Here, then, is an obvious reason for making the children of Mrs. Paxton, instead of their mother, the devisees. But the same reason does not apply to the children of Mrs. Sullivan, because she had none at the date of the will, and was herself then alive. Moreover, it would' he reasonable to presume, that the testator intended to provide for his daughter .Jane, as well as for his son Charles; and it would be unreasonable to presume, that he would have omitted his daughter Jane, and have devised his property to grand children who might never he born, especially as he did not pretermit his son Charles, and substitute Ms children. It does not appear that thére was any re-publication of the will, or that the testator had heard of Mrs. Sullivan’s death, or of the birth of her child.
As then, the appellees seem not to he the exclusive owners of the slaves, the circuit court erred in overruling the motion for a nonsuit, and consequently, in overruling the motion for a new trial.
Wherefore, the judgment is reversed, and the cause remanded for a new trial.